**[PUBLISH]**

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE ELEVENTH CIRCUIT

_____

No. 02-10223

_____

FILED
U.S. COURT OF
APPEALS
ELEVENTH CIRCUIT
OCT 31 2002
THOMAS K. KAHN

D. C. Docket No. 00-00676-CV-D-N

CYNTHIA LOVE,

                                        Plaintiff-Appellant,

                    versus

DELTA AIR LINES,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(October 31, 2002)

Before DUBINA, MARCUS and GOODWIN*, Circuit Judges.

MARCUS, Circuit Judge:

_____

*Honorable Alfred T. Goodwin, U.S. Circuit Judge for the Ninth Circuit, sitting by
designation.

The Air Carrier Access Act of 1986 (the "ACAA"), 100 Stat. 1080, as amended, 49 U.S.C. § 41705, prohibits air carriers from discriminating against disabled individuals. This interlocutory appeal presents a question of first impression in this circuit: Does the ACAA create by implication a private right of action in a federal district court for a disabled individual alleging violations of its provisions? The district court answered this question in the affirmative. However, after careful review of the ACAA's text and structure, we can discern no congressional intent to create such a private right of action. Accordingly, we reverse.

## I.

Love was stricken with polio at the age of three and is paralyzed. She has the ability to neither stand nor walk, and accordingly uses a wheelchair.

The present dispute arises from events occurring before and during a Delta Air Lines, Inc. ("Delta") flight from Montgomery, Alabama to Colorado Springs, Colorado on May 26, 1998. While making reservations prior to the flight, Love notified the airline of her "special needs." During the flight, Love became ill and had to be carried to the restroom by her son. Love asserts that Delta failed to provide an accessible "call button" with which she could page a flight attendant; that Delta failed to provide an aisle chair to assist her in accessing the restroom

2

facilities; that the restroom was too small to accommodate her; that she was not afforded privacy in the restroom; and that Delta failed to provide adequately trained flight personnel.

Love filed suit in the United States District Court for the Middle District of Alabama, asserting claims under the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. §§ 12101 et seq., and the ACAA, 49 U.S.C. § 41705.[1]  In her

---

[1] The ACAA was enacted as § 404(c) of the Federal Aviation Act of 1958, see Pub. L. 99-435, § 2(a), 100 Stat. 1080 (1986), and was codified at 49 U.S.C. § 1374(c).  It was amended and recodified in 1994 at 49 U.S.C. § 41705.  See Pub. L. 103-272, § 1(e), 108 Stat. 1141 (1994). Subsections (b) and (c) of § 41705 were added by the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century (the "FAIR Act"), Pub. L. No. 106-181, § 707, 114 Stat. 61 (2000). 49 U.S.C. § 41705 provides in full that:

> (a) In general. -- In providing air transportation, an air carrier, including (subject to section 40105(b)) any foreign air carrier, may not discriminate against an otherwise qualified individual on the following grounds:
>
> > (1) the individual has a physical or mental impairment that substantially limits one or more major life activities.
> >
> > (2) the individual has a record of such an impairment.
> >
> > (3) the individual is regarded as having such an impairment.
>
> (b) Each act constitutes separate offense. -- For purposes of section 46301(a)(3)(E), a separate violation occurs under this section for each individual act of discrimination prohibited by subsection (a).
>
> (c) Investigation of complaints. --
>
> > (1) In general. -- The Secretary shall investigate each complaint of a violation of subsection (a).
> >
> > (2) Publication of data. -- The Secretary shall publish

complaint, Love sought a declaration that Delta had engaged in discrimination by not ensuring that its facilities and services were accessible to disabled persons; a permanent injunction requiring Delta to restructure its facilities and services, train its employees to provide disabled individuals equal access to those facilities and services, and avoid future acts of disability-based discrimination; and monetary relief in the form of compensatory and punitive damages, costs and attorneys' fees.

On cross-motions for summary judgment, the district court held that Love could not maintain a claim under the ADA because the relevant portion of that Act

---

disability-related complaint data in a manner comparable to other consumer complaint data.

(3) Review and report. -- The Secretary shall regularly review all complaints received by air carriers alleging discrimination on the basis of disability and shall report annually to Congress on the results of such review.

(4) Technical assistance. -- Not later than 180 days after the date of the enactment of this subsection, the Secretary shall --

(A) implement a plan, in consultation with the Department of Justice, the United States Architectural and Transportation Barriers Compliance Board, and the National Council on Disability, to provide technical assistance to air carriers and individuals with disabilities in understanding the rights and responsibilities set forth in this section; and

(B) ensure the availability and provision of appropriate technical assistance manuals to individuals and entities with rights or responsibilities under this section.

expressly excludes aircraft from its coverage.  See Love v. Delta Air Lines, 179 F.

Supp. 2d 1313, 1316 (M.D. Ala. 2001).  The district court also found that the

ACAA implies a private right of action, see id. at 1321, but determined that the

ACAA permits private litigants only injunctive and declaratory relief.  See id. at

1326.  The district court granted summary judgment to Delta on Love's claims

concerning the call button and the size and privacy of the on-board restroom, see

id. at 1330-31, but concluded that genuine issues of material fact precluded the

entry of summary judgment on Love's claims regarding the on-board aisle chair

and the adequacy of the training received by Delta's flight personnel.  See id. at

1329-30.

Pursuant to 28 U.S.C. § 1292(b), we granted Love's petition to

interlocutorily appeal two questions:  (1) Does the ACAA imply a private cause of

action?; and, if so, (2) What remedies are available to private litigants?  Because

we answer the first question in the negative, we do not reach the second one.

II.

The issue of whether a statute creates by implication a private right of action

is a "question of statutory construction," Cannon v. Univ. of Chicago, 441 U.S.

677, 688, 99 S. Ct. 1946, 1953, 60 L. Ed. 2d 560 (1979), which we review de novo.

See Pharmaceutical Research and Mfrs. of Am. v. Meadows, 304 F.3d 1197, 1199

(11th Cir. 2002).  As we discussed extensively in <u>Jackson v. Birmingham Bd. of Educ.</u>, 11th Cir., 2002, -- F.3d --, (No. 02-11303, October 21, 2002), our present analysis of this issue in the context of the ACAA is informed most significantly by the Supreme Court's recent decision in <u>Alexander v. Sandoval</u>, which distills and clarifies the approach we are obliged to follow.  <u>See</u> 532 U.S. 275, 121 S. Ct. 1511, 149 L. Ed. 2d 517 (2001).

Until its decision in <u>Cort v. Ash</u>, 422 U.S. 66, 95 S. Ct. 2080, 45 L. Ed. 2d 26 (1975), the Supreme Court implied a private right of action from a statute if it concluded that doing so would advance what it perceived to be the congressional <u>purpose</u> in enacting the statute.  <u>See, e.g.</u>, <u>J.I. Case Co. v. Borak</u>, 377 U.S. 426, 433, 84 S. Ct. 1555, 1560, 12 L. Ed. 2d 423 (1964) ("[I]t is the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose.").  In <u>Cort</u>, however, the Court lent a more discernible shape to this inquiry, as it articulated four factors that must be considered before a private right of action may be implied:

> First, is the plaintiff "one of the class for whose especial benefit the statute was enacted," -- that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law,

6

in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

422 U.S. at 78, 95 S. Ct. at 2088 (quoting Texas & Pac. Ry. Co. v. Rigsby, 241 U.S. 33, 39, 36 S. Ct. 482, 484, 60 L. Ed. 874 (1916)) (additional citations omitted).

Since the late 1970s, the Supreme Court has gradually receded from its reliance on three of these four factors, focusing exclusively on legislative intent to create a private right of action as the touchstone of its analysis.[2] Sandoval is the culmination of this trend, announcing that:

> Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress. The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute. Raising up causes of action where a

---

[2]See, e.g., Touche Ross & Co. v. Redington, 442 U.S. 560, 575, 99 S. Ct. 2479, 2489, 61 L. Ed. 2d 82 (1979) ("The central inquiry [is] whether Congress intended to create, either expressly or by implication, a private cause of action."); Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 15-16, 100 S. Ct. 242, 245, 62 L. Ed. 2d 146 (1979) ("While some opinions of the Court have placed considerable emphasis upon the desirability of implying private rights of action in order to provide remedies thought to effectuate the purposes of a given statute, what must ultimately be determined is whether Congress intended to create the private remedy asserted . . . .") (citation omitted); Universities Research Ass'n, Inc. v. Coutu, 450 U.S. 754, 771, 101 S. Ct. 1451, 1462, 67 L. Ed. 2d 662 (1981) ("[I]t must . . . be asked whether the language of the statute indicates that Congress intended that it be enforced through private litigation."); Thompson v. Thompson, 484 U.S. 174, 179, 108 S. Ct. 513, 516, 98 L. Ed. 2d 512 (1988) ("The intent of Congress remains the ultimate issue . . . .").

> statute has not created them may be a proper function for common-law courts, but not for federal tribunals.

532 U.S. at 286-87, 121 S. Ct. at 1519-1520 (citations and internal quotations omitted, emphasis added); see also Gonzaga Univ. v. Doe, -- U.S. --, 122 S. Ct. 2268, 2276, 153 L. Ed. 2d 309 (2002) (The inquiry "simply require[s] a determination as to whether or not Congress intended to confer individual rights upon a class of beneficiaries.") (emphasis added). The other three Cort factors remain relevant only insofar as they provide evidence of whether Congress intended to create a private cause of action.

Sandoval also clearly delimits the sources that are relevant to our search for legislative intent. First and foremost, we look to the statutory text for "'rights-creating' language." Sandoval, 532 U.S. at 288, 121 S. Ct. at 1521 (citation omitted); see also Gonzaga Univ., 122 S. Ct. at 2276 n.3 ("Where a statute does not include this sort of explicit 'right- or duty-creating language' we rarely impute to Congress an intent to create a private right of action."); Cannon, 441 U.S. at 690 n.13, 99 S. Ct. at 1954 n.13 ("Not surprisingly, the right- or duty-creating language of the statute has generally been the most accurate indicator of the propriety of implication of a cause of action."). "Rights-creating language" is language "explicitly confer[ing] a right directly on a class of persons that include[s] the

8

plaintiff in [a] case," Cannon, 441 U.S. at 690 n.13, 99 S. Ct. at 1954 n.13, or language identifying "the class for whose especial benefit the statute was enacted." Rigsby, 241 U.S. at 39, 36 S. Ct. at 484, 60 L. Ed. 874 (1916), quoted in Cannon, 441 U.S. at 688 n.9, 99 S. Ct. at 1953 n.9. By contrast, "statutory language customarily found in criminal statutes . . . and other laws enacted for the protection of the general public," or a statute written "simply as a ban on discriminatory conduct by recipients of federal funds," provides "far less reason to infer a private remedy in favor of individual persons." Cannon, 441 U.S. at 690-93, 99 S. Ct. at 1954-55; see also Sandoval, 532 U.S. at 289, 121 S. Ct. at 1521 ("Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'") (quoting California v. Sierra Club, 451 U.S. 287, 294, 101 S. Ct.1775, 1779, 68 L. Ed. 2d 101 (1981)); Touche Ross & Co. v. Redington, 442 U.S. 560, 576, 99 S. Ct. 2479, 2489, 61 L. Ed. 2d 82 (1979) ("The question whether Congress . . . intended to create a private right of action [is] definitely answered in the negative" where a "statute by its terms grants no private rights to any identifiable class[.]").

Second, we examine the statutory structure within which the provision in question is embedded. If that statutory structure provides a discernible enforcement mechanism, Sandoval teaches that we ought not imply a private right

9

of action because "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." Sandoval, 532 U.S. at 290, 121 S. Ct. at 1521-22. Indeed, Sandoval observes that this suggestion is "[s]ometimes . . . so strong that it precludes a finding of congressional intent to create a private right of action, even though other aspects of the statute (such as language making the would-be plaintiff 'a member of the class for whose benefit the statute was enacted') suggest the contrary." 523 U.S. at 290, 121 S. Ct. at 1522 (quoting Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 145, 105 S. Ct. 3085, 3092, 87 L. Ed. 2d 96 (1985)).

Third, if -- and only if -- statutory text and structure have not conclusively resolved whether a private right of action should be implied, we turn to the legislative history and context within which a statute was passed. See Sandoval, 532 U.S. at 288, 121 S. Ct. at 1520 ("In determining whether statutes create private rights of action, as in interpreting statutes generally, legal context matters only to the extent it clarifies text.") (citation omitted). We examine legislative history with a skeptical eye, however, because "[t]he bar for showing legislative intent is high. 'Congressional intent to create a private right of action will not be presumed. There must be clear evidence of Congress's intent to create a cause of action.'" McDonald v. S. Farm Bureau Life Ins. Co., 291 F.3d 718, 723 (11th Cir. 2002)

10

(quoting Baggett v. First Nat'l Bank of Gainesville, 117 F.3d 1342, 1345 (11th Cir. 1997)).  Moreover, the legislative history of a statute that is itself unclear about whether a private right of action is implied is unlikely to provide much useful guidance.  See Cannon, 441 U.S. at 694, 99 S. Ct. at 1956 ("[T]he legislative history of a statute that does not expressly create or deny a private remedy will typically be equally silent or ambiguous on the question.").

Finally, if examination of a statute's text, structure, and history does not yield the conclusion that Congress intended it to confer a private right and a private remedy, Sandoval instructs that such a right may not be created or conferred by regulations promulgated to interpret and enforce it:

> Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not.  Thus, when a statute has provided a general authorization for private enforcement of regulations, it may perhaps be correct that the intent displayed in each regulation can determine whether or not it is privately enforceable.  But it is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress.  Agencies may play the sorcerer's apprentice but not the sorcerer himself.

532 U.S. at 291, 121 S. Ct. at 1522 (citations and quotations omitted); see also Touche Ross, 442 U.S. at 577 n.18, 99 S. Ct. at 2489 n.18 ("[T]he language of the statute and not the rules must control.") (citation omitted).  Thus, while regulations that merely interpret a statute may provide evidence of what private rights

11

Congress intended to create, see Sandoval, 532 U.S. at 284, 121 S. Ct. at 1518 ("A Congress that intends the statute to be enforced through a private cause of action intends the authoritative interpretation of the statute to be so enforced as well."), "regulations that go beyond what the statute itself requires" are not enforceable through a private right of action. Id. at 293 n.8, 121 S. Ct. at 1523 n.8.

### III.

We measure whether the ACAA creates by implication a private right of action in a federal district court against the template laid out in Sandoval. It is indisputable that the ACAA does not expressly provide a private entitlement to sue in district court. See Tallarico v. Trans World Airlines, Inc., 881 F.2d 566, 568 (8th Cir. 1989) ("The ACAA does not expressly provide for a cause of action to enable private citizens to seek a remedy for a violation of the Act."); Shinault v. Am. Airlines, Inc., 936 F.2d 796, 800 (5th Cir. 1991) ("The ACAA does not provide for a private cause of action."). Moreover, taken together, the text of the ACAA itself -- as codified at 49 U.S.C. § 41705 -- and the surrounding statutory and regulatory structure create an elaborate and comprehensive enforcement scheme that belies any congressional intent to create a private remedy. Notably absent from that scheme is a private right to sue in a federal district court.

12

Subsection (c) of 49 U.S.C. § 41705 itself mandates that the Department of Transportation (the "DOT") "<u>shall</u> investigate each complaint of a violation of subsection (a)."  49 U.S.C. § 41705(c)(1) (emphasis added).  Subsection (c) further mandates that the DOT "shall publish disability-related complaint data in a manner comparable to other consumer complaint data," and that it "shall regularly review all complaints received by air carriers alleging discrimination on the basis of disability and . . . report annually to Congress on the results of such review."  49 U.S.C. § 41705(c)(2)-(3).

This requirement that the DOT investigate each complaint of an ACAA violation is augmented by a comprehensive administrative enforcement mechanism.  A disabled individual may file a complaint directly with the DOT:  "A person may file a complaint in writing with the Secretary of Transportation . . . about a person violating" the ACAA.  49 U.S.C. § 46101(a)(1).  After notice and an opportunity for a hearing, the DOT may enter an order compelling compliance with the ACAA, <u>see</u> 49 U.S.C. § 46101(a)(4);[3] may revoke a carrier's air carrier

_____

[3] 49 U.S.C. § 46101(a)(4) provides that "[a]fter notice and an opportunity for a hearing . . . , the Secretary of Transportation, Under Secretary, or Administrator shall issue an order to compel compliance with this part if the Secretary, Under Secretary, or Administrator finds in an investigation under this subsection that a person is violating this part."

certificate, see 49 U.S.C. § 41110(a)(2)(B);[4] or may impose up to a $10,000 fine

for each violation, see 49 U.S.C. § 46301(a)(3)(E).[5]  The DOT may also initiate an

action in a federal district court to enforce the ACAA, see 49 U.S.C. § 46106,[6] or

may ask the Department of Justice to bring a civil action.  See 49 U.S.C. §

46107(b)(1)(A)-(B).[7]

In addition to this administrative enforcement regime established by the

ACAA itself, the regulations promulgated by the DOT mandate that each air carrier

establish procedures to resolve ACAA disputes.[8]  Air carriers are required to

"implement a complaint resolution mechanism, including designating one or more

---

[4]49 U.S.C. § 41110(a)(2)(B) provides that "after notice and an opportunity for a hearing . . . the Secretary may . . . revoke any part of a certificate if the Secretary finds that the holder of the certificate intentionally does not comply with . . . section[] . . . 41705 . . ., a regulation or order of the Secretary under [that] provision[], or a term of its certificate."  See also 14 C.F.R. § 383.2 (same).

[5]49 U.S.C. § 46301(a)(3)(E) provides that "[a] civil penalty of not more than $10,000 may be imposed for each violation . . . of section 41705, relating to discrimination against handicapped individuals."

[6]49 U.S.C. § 46106 provides that "[t]he Secretary of Transportation . . . may bring a civil action against a person in a district court of the United States to enforce this part or a requirement or regulation prescribed, or an order or any term of a certificate or permit issued, under this part."

[7]49 U.S.C. § 46107(b)(1)(A)-(B) provide that "[o]n request of the Secretary of Transportation . . . , the Attorney General may bring a civil action in an appropriate court . . . (A) to enforce this part . . . ; and (B) to prosecute a person violating this part . . . ."

[8]The complaint resolution procedures created by individual carrier need not be exhausted before an individual may seek administrative enforcement.  An aggrieved individual may seek administrative action immediately by "fil[ing] a formal complaint" directly with the DOT. 14 C.F.R. § 382.65(d); see also 14 C.F.R. § 302.

14

complaints resolution official(s) (CRO) to be available at each airport which the carrier serves." 14 C.F.R. § 382.65(a). These CROs "shall have the authority to make dispositive resolution of complaints on behalf of the carrier." 14 C.F.R. § 382.65(a)(4). When a complaint is made to a CRO about a prospective violation of the ACAA, the CRO "shall take or direct other carrier personnel to take action, as necessary, to ensure compliance with" the ACAA and its attendant regulations. 14 C.F.R. § 382.65(a)(5)(i). If a complaint is made to a CRO regarding an alleged violation of the ACAA that already has occurred, the CRO "shall provide to the complainant a written statement" setting forth the reasons for her determination and, if she finds that a violation has in fact occurred, "what steps, if any, the carrier proposes to take in response to the violation." 14 C.F.R. § 382.65(a)(5)(ii)-(iii). This statement must include language "inform[ing] the complainant of his or her right to pursue DOT enforcement action." 14 C.F.R. § 382.65(a)(5)(iv).

In addition to providing a CRO, each carrier must also "establish a procedure for resolving written complaints alleging violation of" the ACAA and the regulations implementing it. 14 C.F.R. § 382.65(b). As with complaints made to a CRO, the carrier must answer written complaints with a statement outlining its response that includes both "a summary of the facts" and language "inform[ing]

15

the complainant of his or her right to pursue DOT enforcement action."  14 C.F.R. §382.65(b)(3).

Although certainly extensive, the measures described above do not exhaust the remedial avenues provided by Congress in the ACAA.  Indeed, the legislature also <u>has</u> expressly created a limited private right to seek judicial review of a DOT enforcement decision.[9]  In particular, an individual with "a substantial interest" in a DOT enforcement action may petition for review in a <u>United States Court of Appeals</u>.  <u>See</u> 49 U.S.C. § 46110(a).[10]  The court of appeals "has exclusive

---

[9]This right to judicial review of the DOT's actions is plainly distinct from a private right to bring an ACAA claim in federal district court <u>ab</u> <u>initio</u>.

[10]49 U.S.C. § 46110 provides:

> (a) Filing and venue.-- . . . [A] person disclosing a substantial interest in an order issued by the Secretary of Transportation . . . under this part may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business. The petition must be filed not later than 60 days after the order is issued. The court may allow the petition to be filed after the 60th day only if there are reasonable grounds for not filing by the 60th day.

> (b) Judicial procedures.--When a petition is filed under subsection (a) of this section, the clerk of the court immediately shall send a copy of the petition to the Secretary, Under Secretary, or Administrator, as appropriate.  The Secretary . . . shall file with the court a record of any proceeding in which the order was issued, as provided in section 2112 of title 28.

> (c) Authority of court.--When the petition is sent to the Secretary . . . , the court has exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order and may order the Secretary . . . to conduct further proceedings. After reasonable notice to the Secretary . . . , the court may grant interim relief by staying the order or taking other appropriate action when good cause for its

16

jurisdiction to affirm, amend, modify, or set aside any part of the [DOT's] order and may order the Secretary, Under Secretary, or Administrator to conduct further proceedings." 49 U.S.C. § 46110(c). The court of appeals may also "grant interim relief by staying the order or taking other appropriate action when good cause for its action exists." Id. The only statutorily-imposed limitation on the court's broad ability to "affirm, amend, modify, or set aside" an agency order is a mandated deference to an agency's factual findings: "Findings of fact by the Secretary, Under Secretary, or Administrator, if supported by substantial evidence, are conclusive."[11] Id.

---

action exists. Findings of fact by the Secretary . . . , if supported by substantial evidence, are conclusive.

(d) Requirement for prior objection.--In reviewing an order under this section, the court may consider an objection to an order of the Secretary . . . only if the objection was made in the proceeding conducted by the Secretary . . . or if there was a reasonable ground for not making the objection in the proceeding.

(e) Supreme Court review.--A decision by a court under this section may be reviewed only by the Supreme Court under section 1254 of title 28.

[11]Love argues that no individual may challenge a decision by the DOT not to investigate an ACAA complaint. This is so, she contends, because the Supreme Court held in Heckler v. Cheney, 470 U.S. 821, 105 S. Ct. 1649, 84 L. Ed. 2d 714 (1985), that an agency's decision not to take investigative or enforcement action falls solely within its discretion and is presumptively unreviewable. See id. at 832, 105 S. Ct. at 1656 ("[A]n agency's decision not to take enforcement action should be presumed immune from judicial review under [5 U.S.C.] § 701(a)(2)."). Heckler emphasizes, however, that Congress may abrogate this presumption:

[A]n agency's decision not to take enforcement action . . . is only presumptively unreviewable; the presumption may be rebutted where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers.

17

The fact that Congress has expressly provided private litigants with one right of action -- the right to review of administrative action in the courts of appeals -- powerfully suggests that Congress did not intend to provide other private rights of action. See Sandoval, 532 U.S. at 290, 121 S. Ct. at 1521-22 ("The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others."); Touche Ross, 442 U.S. at 572, 99 S. Ct. at 2487 ("Obviously . . . when Congress wished to provide a private damage remedy, it

---

Thus, in establishing this presumption in the APA, Congress did not set agencies free to disregard legislative direction in the statutory scheme that the agency administers. Congress may limit an agency's exercise of enforcement power if it wishes, either by setting substantive priorities, or by otherwise circumscribing an agency's power to discriminate among issues or cases it will pursue.

470 U.S. at 832-33, 105 S. Ct. at 1656 (citations and footnote omitted) (emphasis added). Here, subsection (c) of § 41705 imposes a mandatory obligation upon the DOT to investigate every complaint of a violation of the ACAA. The decision whether to investigate is thus not discretionary and is subject to judicial review outlined above.

In supplemental briefing, Love also argues that she lacks standing to assert the right of action for review in a court of appeals explicitly provided by § 46110, because, in the absence of compensatory damages, her injuries will not be redressable by the imposition of a civil fine or injunction against Delta. This argument is plainly wrong. To reiterate, the DOT may provide any individual with a "substantial interest" in a DOT proceeding with both declaratory and injunctive relief. Because the courts of appeals have the power "to affirm, amend, modify, or set aside" any part of a DOT order, they too have the power to provide equitable remedies. 49 U.S.C. § 46110(c). Accordingly, an individual with a substantial interest is potentially entitled to multiple forms of relief. The fact that injuries suffered are not redressable by compensatory damages does not establish that they are not redressable at all. See generally Booth v. Churner, 532 U.S. 731, 740-41, 121 S. Ct. 1819, 1824-25, 149 L. Ed. 2d 958 (2001) (rejecting the argument that exhaustion was not required under the Prison Litigation Reform Act where the administrative grievance process was capable of affording the would-be plaintiff relief, but not relief of the variety that he preferred, i.e., compensatory damages).

18

knew how to do so and did so expressly.") (citation omitted); cf. Keene Corp. v. United States, 508 U.S. 200, 208, 113 S. Ct. 2035, 2040, 124 L. Ed. 2d 118 (1993) ("[W]here Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (alterations in original) (quoting Russello v. United States, 464 U.S. 16, 23, 104 S. Ct. 296, 300, 78 L. Ed. 2d 17 (1983)).

Thus, the ACAA and its attendant regulations provide three separate enforcement mechanisms. First, the DOT is required to investigate ACAA claims and is given broad powers to sanction air carriers for ACAA violations. Second, air carriers themselves are required to establish ACAA dispute resolution mechanisms. Finally, once the DOT has acted in response to an alleged ACAA violation, an individual "with a substantial interest" in that action may seek review in a court of appeals.

The explicit provision of these elaborate enforcement mechanisms strongly undermines the suggestion that Congress also intended to create by implication a private right of action in a federal district court but declined to say so expressly.

See Sandoval, 532 U.S. at 290, 121 S. Ct. at 1521-22.[12] Indeed, the enforcement scheme created by Congress and augmented by the DOT creates so strong a suggestion that Congress did not intend to create a private right of action "that it precludes a finding of congressional intent to create a private right of action, even though other aspects of the statute (such as language making the would-be plaintiff 'a member of the class for whose benefit the statute was enacted') suggest the contrary." Id. at 290, 121 S. Ct. at 1522 (quoting Russell, 473 U.S. at 145, 105 S. Ct. at 3092, 87 L. Ed. 2d 96 (1985)).

This conclusion is further reinforced, we believe, by an examination of the circumstances that led up to the ACAA's enactment. The apparent congressional purpose in passing the ACAA was to respond to the Supreme Court's restrictive reading of § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, in Department of Transp. v. Paralyzed Veterans of Am., 477 U.S. 597, 106 S. Ct. 2705, 91 L. Ed.

---

[12]See also Karahalios v. Nat'l Fed'n of Fed. Employees, 489 U.S. 527, 533, 109 S. Ct. 1282, 1286-87, 103 L. Ed. 2d 539 (1989) ("[I]t is . . . an 'elemental canon' of statutory construction that where a statute expressly provides a remedy, courts must be especially reluctant to provide additional remedies.") (quoting Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 19, 100 S. Ct. 242, 247, 62 L. Ed. 2d 146 (1979)); Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers, 414 U.S. 453, 458, 94 S. Ct. 690, 693, 38 L. Ed. 2d 646 (1974) ("[W]hen legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies."); McDonald, 291 F.3d at 725 ("When Congress creates certain remedial procedures, we are, 'in the absence of strong indicia of contrary congressional intent, . . . compelled to conclude that Congress provided precisely the remedies it considered appropriate.'") (alteration in original) (quoting Karahalios, 489 U.S. at 533, 109 S. Ct. at 1286-87 (quoting Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n, 453 U.S. 1, 15, 101 S. Ct. 2615, 2623, 69 L. Ed. 2d 435 (1981))).

2d 494 (1986), by creating protection for disabled individuals against discrimination by commercial air carriers. In Paralyzed Veterans, the Supreme Court held that § 504 did not apply to commercial airlines because "[n]ot a single penny of [federal funding] is given to the airlines." 477 U.S. at 605, 106 S. Ct. at 2711. The legislative history reveals that Congress was concerned that "the practical effect of DOT v. PVA is to leave handicapped air travelers subject to the possibility of discriminatory, inconsistent and unpredictable treatment on the part of air carriers," S. Rep. No. 400, at 2329 (1986),[13] and that it passed the ACAA to protect disabled individuals.

Plainly, Congress could have afforded this protection through numerous means, including the provision of a private right to sue in the federal district courts. Yet the legislature instead opted to create an elaborate administrative enforcement scheme, augmented only by a limited form of judicial review of the DOT's actions in the courts of appeals. Thus, were we to imply a private right of action in district court, we would do so not only in the face of Congress's creation of various other remedial mechanisms under the ACAA, but, in particular, despite its provision of a

---

[13]See also 132 Cong. Rec. S11,784 (daily ed. Aug. 15, 1986) (statement of Sens. Dole and Cranston); S. Rep. No. 400, at 2329 ("S. 2703 was introduced in response to the U.S. Supreme Court's decision in U.S. Department of Transportation v. Paralyzed Veterans of America"); 132 Cong. Rec. H7057 (daily ed. Sept. 17, 1986) (statement of Rep. Sundquist); 132 Cong.Rec. H7193 (daily ed. Sept. 18, 1986) (statements of Reps. Mineta, Hammerschmidt, Ackerman, Edgar, and Snyder).

judicial right of action of a different form and in a different forum. So far as we can discern from the ACAA's text and structure, then, Congress did not intend to create a private cause of action in a federal district court, and we cannot do so and remain faithful to the unambiguous teachings of Sandoval.

We are aware that two federal courts of appeals have interpreted the ACAA as conferring a private right of action in federal district court. See Shinault, 936 F.2d at 800; Tallarico, 881 F.2d at 570.[14] Yet both of these decisions antedated Sandoval, and both were based on analyses of all four of the Cort factors; neither focused exclusively on whether Congress intended to create such a right to sue. Following Sandoval, we may not engage in a similarly wide-ranging interpretive inquiry.

_____

[14]In addition to the Fifth and Eighth Circuits, the Ninth Circuit ruled (prior to Sandoval) on the merits of a private cause of action brought under the ACAA without addressing whether the cause of action exists. See Newman v. Am. Airlines, Inc., 176 F.3d 1128 (9th Cir. 1999). Also, in an unpublished opinion, the Ninth Circuit found an implied private right of action under the ACAA. See Adiutori v. Sky Harbor Int'l Airport, 103 F.3d 137 (9th Cir. 1996) (unpublished table disposition) ("Although [the ACAA] does not expressly provide for a private cause of action . . . , we are persuaded by the reasoning of other circuits which have held that [it] implies a private right of action . . . under the test enunciated in Cort v. Ash . . . ."). The D.C. and Sixth Circuits have expressly reserved the question whether the ACAA implies a private right of action. See Tunison v. Cont'l Airlines Corp., 162 F.3d 1187, 1188 n.1 (D.C. Cir. 1998) ("This court has not previously addressed whether there is an implied private right of action under the ACAA, and the issue is not before us in this case. The court below 'presumed' there was a private right of action under the ACAA given holdings to that effect in the 5th and 8th Circuits and Continental's failure to argue to the contrary."); Bower v. Fed. Express Corp., 96 F.3d 200, 204 n.9 (6th Cir. 1996) ("We do not address the question of whether a private right of action exists under the ACAA.").

In sum, our review of the text and structure of the ACAA compels the conclusion that Congress did not intend to create a private right of action in a federal district court to vindicate the ACAA's prohibition against disability-based discrimination on the part of air carriers. Under Sandoval, our inquiry is therefore at an end. See 532 U.S. at 288, 121 S. Ct. at 1520 ("We . . . begin (and find that we can end) our search for Congress's intent with the text and structure of [the statute in question].").  The ACAA's legislative history, on which the Shinault and Tallarico courts focused in significant part, cannot alter our conclusion because "[i]n determining whether statutes create private rights of action, as in interpreting statutes generally, legal context matters only to the extent it clarifies text."[15] Sandoval, 532 U.S. at 288, 121 S. Ct. at 1520 (internal citation omitted).  Where, as here, the text and structure are not in need of clarification, legislative history cannot be used to refashion their clear mandate.

_____

[15]The district court in this case also relied on the legislative history of the FAIR Act to infer that Congress had intended the ACAA to imply a private of action.  See Love, 179 F. Supp. 2d at 1324.  The proposed bill that initially came out of the Senate included a subsection (7)(B) that observed that "[n]othing in subparagraph (A) precludes or affects the right of persons with disabilities to file private rights of action under section 41705."  Id. (quoting 145 Cong. Rec. S12,115-02, S12,121 (daily ed., Oct. 6, 1999)).  This proposed subsection (7)(B) was omitted from the final version of the FAIR Act and was never adopted by Congress.  See id.  Plainly we may not rely on language proposed by one house of Congress and rejected by the full Congress to support the implication of a private right of action.  See Thompson, 484 U.S. at 191-92, 108 S. Ct. at 522 (Scalia, J., concurring in the judgment) ("An enactment by implication cannot realistically be regarded as the product of the difficult lawmaking process our Constitution has prescribed. Committee reports, floor speeches, and even colloquies between Congressmen, . . . are frail substitutes for bicameral vote upon the text of a law and its presentment to the President.").

23

IV.

Statutory intent must be the touchstone of our analysis. Without it -- and, again, the mandate of <u>Sandoval</u> is crystal clear on this point -- we simply cannot create by implication a private right of action, no matter how socially desirable or otherwise warranted the result may be. And our review of the text and structure of the ACAA yields no congressional intent to create a private cause of action in a federal district court.

Congress is, of course, free to protect disabled air passengers by virtually any means it chooses. It certainly may provide them with the right to sue in a district court for ACAA violations. Yet the legislature has not done so, and has instead created an elaborate administrative enforcement regime with subsequent, limited judicial review of the DOT's actions. Under these circumstances, the teachings of <u>Sandoval</u> plainly preclude a federal court from implying such a right of action. The district court therefore erred in so doing. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**