[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-12977
_____

D.C. Docket No. 4:11-cv-00177-CDL


JASON M. COX,

Plaintiff - Appellee,


ESTEVAN CASTILLO,
LEO THOMAS TOOKES, JR.,
ALESIA LEWIS-VINSON,

Plaintiffs -
Counter Defendants -
Appellees,


versus

COMMUNITY LOANS OF AMERICA INC.,
FAST AUTO LOANS, INC.,
DELAWARE TITLE LOANS, INC.,
IDAHO TITLE LOANS, INC.,
ILLINOIS TITLE LOANS, INC.,
FAST AUTO AND PAYDAY LOANS, INC.,
d.b.a. Cash Cow,
SOUTHERN FAST LOANS OF LOUISIANA, INC.,
d.b.a. Cash Cow,

MISSISSIPPIE TITLE LOANS, INC.,
MISSOURI TITLE LOANS, INC.,
NEW ENGLAND AUTO FINANCE, INC.,
NEW ENGLAND AUTO AND PAY LOANS, INC.,
NEW MEXICO TITLE LOANS, INC.,
NEVADA TITLE AND PAYDAY LOANS, INC.,
TENNESSEE TITLE LOANS, INC.,
TEXAS TITLE AND PAYDAY LOANS, LLC,
TEXAS CAR TITLE AND PAYDAY LOAN SERVICES, INC.,
UTAH TITLE LOANS, INC.,
WISCONSIN AUTO TITLE LOANS, INC.,
ROBERT I. REICH,
TERRY FIELDS,
DAKOTA AUTO TITLE LOANS, INC.,

Defendants - Appellants,

ALABAMA TITLE LOANS, INC.,
PR AUTO LOANS, LLC,

Defendants - Counter
Claimants - Appellants,

JOHN DOE,
Corporations 1-900, et al.,

Defendants,

GEORGIA AUTO PAWN INC,

Defendant - Counter Claimant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(August 28, 2015)

2

Before JORDAN and FAY, Circuit Judges, and WALKER,[*] District Judge.

PER CURIAM:

The appellants in this case (collectively "Community Loans") are engaged in the business of making vehicle title loans to consumers. We granted their petition, pursuant to Rule 23(f) of the Federal Rules of Civil Procedure, for interlocutory review of the district court's class certification order. That order certified a class comprised of active duty service members and their dependents who allege that Community Loans' vehicle title loans violate the Military Lending Act, 10 U.S.C. § 987. Because we hold that, at a minimum, a private right of action exists under the MLA for rescission and restitution, and we otherwise conclude that the district court did not abuse its discretion in certifying a class under Federal Rule of Civil Procedure 23(b)(3), we affirm.

## I

We write for the parties, and therefore assume their familiarity with the underlying facts of the case. We recite only what is necessary to resolve this appeal.

Jason M. Cox, Estevan Castillo, Leo Thomas Tookes, Jr., and Alesia Lewis-Vinson (collectively "Plaintiffs") filed suit against Community Loans, seeking declaratory and injunctive relief, as well as compensatory, consequential,

---

[*] Honorable Mark E. Walker, United States District Judge for the Northern District of Florida, sitting by designation.

incidental, and punitive damages.  They alleged that they entered into vehicle-title loan transactions with Community Loans that were prohibited by the MLA because the annual percentage rate of interest for each loan exceeded the MLA's statutory maximum.  The plaintiffs sought certification of their MLA claims under Federal Rules of Civil Procedure 23(b)(2) and (b)(3).[1]

Community Loans opposed the plaintiffs' motion for class certification and sought summary judgment on the plaintiffs' claims.  The district court ruled that a private right of action existed for violations of the MLA and denied Community Loans' request for judgment as a matter of law on the plaintiffs' MLA claims.  The district court further ruled that the damages sought by the plaintiffs for their MLA claims were not merely incidental to equitable relief, and therefore denied the plaintiffs' request to certify a class under Rule 23(b)(2).  Nevertheless, the district court concluded that the certification of a Rule 23(b)(3) class was warranted and granted the plaintiffs' motion, certifying a class defined in pertinent part as follows:

> All covered members of the armed services and their dependents who, between October 1, 2007 and January 2, 2013, entered into, rolled over, renewed, refinanced, or

---

[1] Initially, the plaintiffs sought certification only under Rule 23(b)(2), but later asked for leave to amend their complaint to add a claim for certification under Rule 23(b)(3).  Community Loans opposed the plaintiffs' request for leave to amend, arguing that the deadline to move for class certification had passed and the plaintiffs had not shown good cause for modifying the district court's scheduling order.  The district court granted the plaintiffs' motion for leave to amend, and Community Loans appeals that decision, arguing that the district court abused its discretion.  We disagree, and affirm the district court's ruling in this regard.

4

consolidated a vehicle title loan by any means with a Defendant that imposed an annual percentage rate of greater than 36 percent and required the title of a vehicle as security for the obligation for a term of 181 days or less.

Community Loans appeals.

## II

Community Loans contends that the district court abused its discretion in certifying a class under Rule 23(b)(3), arguing that the plaintiffs failed to satisfy the requirements for class certification. "We review a district court's grant of class certification for abuse of discretion." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1264 (11th Cir. 2009).

> A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous. A district court may also abuse its discretion by applying the law in an unreasonable or incorrect manner. Finally, an abuse of discretion occurs if the district court imposes some harm, disadvantage, or restriction upon someone that is unnecessarily broad or does not result in any offsetting gain to anyone else or society at large.

*Id.* at 1264-65.

We have had the benefit of oral argument in this case, and have carefully reviewed the parties' briefs and the record. We conclude that the district court's analysis of the Rule 23 prerequisites was sufficiently rigorous, and we affirm the judgment of the district court in all respects. We write specifically to address

5

Community Loans' claim that there is no implied private right of action under the MLA.[2]

## A

Although Rule 23 does not grant courts a "license to engage in free-ranging merits inquiries at the certification stage[,]" *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013), we agree with the district court that the issue of whether the MLA contains an implied private right of action is "inextricably intertwined" with that of whether there exist common issues of law for class adjudication.  For if there is no implied private right of action for violations of the MLA, then there are no common issues of law appropriate for adjudication on a class-wide basis.  Accordingly, we address the issue, "but only to the extent [that it is] relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.*

Community Loans contends that the plaintiffs have failed to satisfy the test set out by the Supreme Court in *Alexander v. Sandoval*, 532 U.S. 275 (2001), for identifying when an implied private right of action exists.  They argue that the MLA does not contain any of the "rights-creating" language identified in *Sandoval*, *see id.* at 288, and that it provides a discernable enforcement

---

[2] Congress amended the MLA effective January 2, 2013.  This amendment created a private right of action, but only for those extensions of credit made on or after its effective date.  Thus, this express private right of action is not available to the plaintiffs in this case.  We therefore examine the pre-2013 version of the Act to determine whether an implied private right of action exists.

mechanism, which *Sandoval* indicates suggests Congress' intent to preclude other methods of enforcement,  *see id.* at 290.

"*Sandoval* . . . distills and clarifies the approach we are obliged to follow [in determining whether to imply a private right of action from a statute.]"  *Love v. Delta Air Lines*, 310 F.3d 1347, 1351 (2002).  Describing *Sandoval* as "the culmination of [the Supreme Court's] trend" toward "focusing exclusively on legislative intent to create a private right of action as *the* touchstone of its analysis[,]" we articulated *Sandoval*'s test as follows:

> *Sandoval* . . . clearly delimits the sources that are relevant to our search for legislative intent.  First and foremost, we look to the statutory text for rights-creating language . . . .  Rights-creating language is language explicitly conferring a right directly on a class of persons that includes the plaintiff in a case . . . or language identifying the class for whose special benefit the statute was enacting . . . .  By contrast statutory language customarily found in criminal statutes and other laws enacted for the protection of the general public or a statute written simply as a ban on discriminatory conduct by recipients of federal funds provides far less reason to infer a private remedy in favor of individual persons . . . . Second, we examine the statutory structure within which the provision in question is imbedded.  If that statutory structure provides a discernible enforcement mechanism, *Sandoval* teaches that we ought not imply a private right of action because the express provision of one method of enforcing a substantive rule suggest that Congress intended to preclude others . . . .  Third, if—and *only* if, the statutory text and structure have not conclusively resolved whether a private right of action should be implied, we turn to the legislative history and context within which a statute was passed . . . .  There must be clear evidence of Congress's intent to create a cause of action . . . .  Finally, if examination of a statute's text, structure, and history does not yield the conclusion that Congress intended it to confer a private right and a private remedy,

7

> *Sandoval* instructs that such a right may not be created or conferred by regulations promulgated to interpret and enforce it.

*Id.* at 1352-54 (emphasis in the original) (citations and quotation marks omitted).

We thus begin our analysis by reviewing the statutory text of the MLA.  It is apparent from its language, that the MLA was intended to benefit "covered member[s] of the armed forces [and] dependent[s] of [ ] covered member[s]."  *See Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. at 17 (finding that similar language, which focused on the clients of investment advisers, evidenced Congress' intent to benefit a class of persons).  For example, § 987(a) provides that "[a] creditor who extends consumer credit to *a covered member of the armed forces or a dependent of such a member* shall not require *the member or dependent* to pay interest with respect to the extension of such credit, except [as provided under the Act]."  (emphasis added).  Similarly, § 987(b) provides that "[a] creditor described in subsection (a) may not impose an annual percentage rate of interest greater than 36 percent with respect to the consumer credit extended *to a covered member or a dependent of a covered member*."  (emphasis added).  Finally, § 987(c)(1) provides that "[w]ith respect to any extension of consumer credit . . . *to a covered member or a dependent of a covered member*, a creditor shall provide to the member or a dependent [certain required disclosures]."  (emphasis added).

Moreover, the MLA expressly confers a right upon covered members of the armed forces and their dependents to obtain consumer credit without being

8

required to pay annual interest above the statutory maximum or to submit the title of a vehicle as security for an obligation.  The MLA provides, in pertinent part, that "[a] creditor may not impose an annual percentage rate of interest greater than 36 percent with respect to the consumer credit extended to a covered member or a dependent of a covered member," § 987(b), and that "[i]t shall be unlawful for any creditor to extend consumer credit to a covered member or a dependent of such a member with respect to which . . . the creditor uses . . . the title of a vehicle as security for the obligation," § 987(e)(5).

Such language evinces "congressional intent to create new rights," *Sandoval*, 532 U.S. at 289, and is analogous to similar "right- or duty- creating language" in the Privacy Act of 1974, which we held "unambiguously conferred [a] right [on individuals]."  *See Schwier v. Cox*, 340 F.3d 1284, 1291-92 (11th Cir. 2003) (holding that the Privacy Act, which stated that "[i]t shall be unlawful for any Federal, State or local government agency to deny to any individual any right, benefit, or privilege provided by law because of such individual's refusal to disclose his social security account number," clearly conferred "a legal right on individuals: the right to refuse to disclose his or her [social security number] without suffering the loss 'of any right, benefit, or privilege provided by law'"). *See also Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1167-68 (11th Cir. 2003) (finding "rights-creating language" in a statute that provided that "[n]o person shall

9

discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter," because the statute "specifically identifie[d] a protected class and expressly confe[rred] on that class a right not to be retaliated against").

In addition, the methods provided by the MLA for enforcing its provisions manifest an intent to create a private remedy. The MLA's "Penalties and remedies" subsection provides, in part, that "[a]ny credit agreement, promissory note, or other contract prohibited under this section is void from the inception of such contract." § 987(f)(3). The Supreme Court has held that "when Congress declare[s] in [a statute] that certain contracts are void, it intend[s] that the customary legal incidents of voidness [ ] follow, including the availability of a suit for rescission or for an injunction against continued operation of the contract, and for restitution." *Transamerica*, 444 U.S. at 19. [3]

Thus, "[b]y declaring certain contracts void, [the MLA] by its terms necessarily contemplates that the issue of voidness under its criteria may be litigated somewhere[,]" for "[a] person with the power to void a contract ordinarily may resort to a court to have the contract rescinded and to obtain restitution of consideration paid." *Id.* at 18. We think this scheme "displays a [congressional]

---

[3] As pled, the plaintiffs' complaint seeks, in part, a declaration that the vehicle title loans at issue are void under the MLA, an injunction against their continued operation, and a return of the monies and certificates of title retained from covered members and their dependents as a result of the loans.

10

intent to create not just a private right but also a private remedy." *Sandoval*, 532 U.S. at 286 (citing *Transamerica*, 444 U.S. at 15).

Accordingly, because we conclude that the text and structure of the MLA unambiguously confers on covered members of the armed forces and their dependents certain legal rights, including the "'right to rescind' [and seek restitution on] a contract void under the criteria of the statute[,]" *Transamerica*, 444 U.S. at 19, we hold that an implied private right of action exists under the MLA.[4]

### III

Based on the foregoing, we affirm the district court's ruling that the MLA authorizes an implied private right of action. Otherwise finding no abuse of discretion in the district court's analysis of the Rule 23 prerequisites, we affirm the district court's order certifying a class under Federal Rule of Civil Procedure 23(b)(3).

**AFFIRMED.**

---

[4] We recognize that Community Loans has argued in the alternative that, if we were to conclude that an implied private right of action exists under the MLA, then the relief available to the plaintiffs should be limited to rescission of the vehicle title loan contracts and restitution. At this stage, however, it is not necessary for us to decide the exact relief available to the plaintiffs. We decide today only that, for certification purposes, the plaintiffs have alleged a common question of law appropriate for class adjudication.

11